IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Angela M., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:20-cv-50058 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angela M. brings this action under 42 U.S.C. § 405(g) seeking remand of the decision denying her supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

Plaintiff asserts she is unable to work due to pain in both of her hips and symptoms related to her depression. On March 3, 2016, Plaintiff filed an application for supplemental security income. Plaintiff alleged a disability beginning on January 1, 2012 because of bilateral hip osteoarthritis, bipolar disorder, and a dislocated disk. Plaintiff later amended her alleged onset date to March 3, 2016, when she began experiencing increased pain in her hips.

Plaintiff last worked in 2012 as a home health aide, but her work history before that was minimal. R. 177-81. In June 2013, Plaintiff received mental health treatment from Rosecrance for

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

1

her depression, mood swings, and anger outbursts and was diagnosed with bipolar disorder.[2] R. 424. Plaintiff reported being homeless and stated that she could not keep a job because she would threaten her boss or get into fights. Plaintiff was successfully discharged from treatment in January 2014.

In June 2015, Plaintiff sought treatment from Crusader Community Health for mood swings and suicidal ideations, noting that her medications were not working. Plaintiff was prescribed new medication for her bipolar disorder. In Plaintiff's treatment notes from October 2015, she reported pain in her hips and no depression symptoms, but she was isolating herself. Plaintiff had stopped taking her medications, noting that her bipolar disorder medication made her feel anxious. Plaintiff received different medications for her bipolar disorder.

In December 2015, Plaintiff reported taking her medications. She also reported pain in both hips and imaging revealed severe bilateral hip joint osteoarthritis with moderate joint space narrowing and marginal osteophyte formation. R. 495. In March 2016, Plaintiff again reported severe bilateral hip pain. In April 2016, Plaintiff requested a referral to an orthopedic surgeon.

On June 2, 2016, Dr. K.P. Ramchandani conducted a consultative examination of Plaintiff for her physical impairments. R. 525-31. Plaintiff complained of constant pain, rated at a 10/10, which was aggravated by sitting and standing for 20 minutes and walking four blocks unassisted. In conducing Plaintiff's physical exam, Dr. Ramchandani reported Plaintiff was in no acute physical distress and her gait was slow but unassisted. Plaintiff's range of motion was restricted in both of her hips. Dr. Ramchandani also reported that Plaintiff was alert and made proper eye

---

[2] Plaintiff was also treated for and had a history of alcohol and drug abuse. However, Plaintiff does not raise any arguments about the ALJ's treatment of Plaintiff's drug use, so the Court will only briefly reference it in this decision.

contact, but that she did not know the meaning of "do not cry over spilled milk" or "the grass is greener on the other side."

On June 17, 2016, Dr. Peter Thomas conducted a consultative examination of Plaintiff for her mental impairments. R. 533-36. Dr. Thomas reported that Plaintiff's gait appeared to be within normal limits. He also noted that Plaintiff had good eye contact and seemed to give her best effort. However, Plaintiff's affect was flat and with a sullen and depressed mood. Plaintiff was able to interpret the meaning of "do not cry over spilled milk" and "the grass is greener on the other side." Dr. Thomas concluded that Plaintiff had difficulties managing her mood for several years and that her longstanding depression interferes with her motivation. He noted that Plaintiff had only participated in mental health services on a few occasions, but she used medication to manage her depression. Dr. Thomas diagnosed Plaintiff with major depressive disorder of moderate severity. He opined that Plaintiff would benefit from more intensive and comprehensive mental health services.

In July 2016, Plaintiff reported pain in both her hips and requested a cane. Also, in July 2016, state agency psychologist Donna Hudspeth, Psy.D., reviewed Plaintiff's medical records and found that her mental impairment was not severe, and she was only mildly limited in activities of daily living, maintaining social functioning, and concentration, persistence, or pace. R. 72-83. Dr. Hudspeth also found that Plaintiff's depression was secondary to her substance abuse and "due to her medical, situational issues." R. 78. State agency physician Richard Lee Smith, M.D., relying mainly on Dr. Ramchandani's consultative examination, found that Plaintiff had the RFC to perform unskilled, light work with additional postural limitations. R. 80. In doing so, Dr. Smith only partially credited Plaintiff's reports of symptoms and limitations as "overinflated when compared to actual objective medical evidence" in the record. R. 79. Upon reconsideration in

January 2017, state agency physicians Donald Henson, Ph.D. and Vidya Madala, M.D., reviewed the record and affirmed the prior assessments from Drs. Hudspeth and Smith. R. 86-98.

In November 2016, Plaintiff reported severe depression despite taking her medications. In December 2016, Plaintiff returned to Rosecrance for mental health treatment. The record indicates that treatment was recommended, but Plaintiff did not complete her assessment to receive treatment. R. 92, 567. There is no indication in the record why Plaintiff did not complete her assessment.

In February 2017, Plaintiff reported continued hip pain that had gotten progressively worse over the last two years. Plaintiff reported using a cane since approximately August 2016. On examination, Plaintiff had restricted range of motion in both hips. A February 2017 x-ray revealed severe degenerative changes in both hips with cystic formation and almost complete articular cartilage loss. R. 570. Plaintiff was scheduled for right hip replacement surgery in April 2017, but that surgery was later rescheduled because her primary care physician did not clear her for surgery until September 2017.

In a July 2017 preoperative examination for her hip, Plaintiff was taking tramadol[3] and reported her hip pain was a 10/10. Plaintiff again reported using a cane. In September 2017, Plaintiff received an increased dose of tramadol for her hip pain.

On October 2, 2017, Plaintiff underwent right hip replacement surgery. R. 575. On October 12, 2017, Plaintiff's follow up treatment note stated that she was still in a wheelchair and taking hydrocodone-acetaminophen[4] and tramadol for pain. R. 581. On October 17, 2017, Plaintiff

---

[3] Tramadol is an opioid analgesic that is "used to relieve moderate to moderately severe pain." Mayo Clinic, Tramadol, https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Apr. 1, 2021).
[4] Hydrocodone-acetaminophen is "used to relieve pain severe enough to require opioid treatment and when other pain medicines did not work well enough or cannot be tolerated." Mayo Clinic, Hydrocodone

was progressing well and reported no pain in her right hip. An x-ray taken the same day revealed a stable right total hip arthroplasty and marked osteoarthrosis of the left hip. R. 588. Plaintiff was ordered to continue using a walker for another two weeks and "then may resume weight-bearing as tolerated." R. 582. Plaintiff was also ordered to continue with physical therapy and follow up for an x-ray in four weeks. An x-ray was ordered on November 10, 2017, but no x-ray was provided in the record. R. 588.

On January 5, 2018, Plaintiff, represented by an attorney, testified at a hearing before an Administrative Law Judge ("ALJ"). R. 39-71. Plaintiff was 54 years old and was using a cane. Plaintiff testified that she started using a cane about a year ago because of her hip pain, but she did not have a prescription for it. Plaintiff testified that after surgery her right hip felt better, but she still had pain with sitting, standing, or walking for long periods. Plaintiff could stand, without or without her cane, for about five minutes and sit for ten minutes. She could only walk half a block with her cane. Plaintiff was still doing physical therapy for her right hip. Plaintiff thought she had recently seen her hip surgeon for a follow up appointment in December 2017, but she could not remember. Plaintiff testified that she had to cancel a recent appointment with her surgeon because of the weather.

Plaintiff also testified that she had pain in her left hip, which was more painful than her right hip before the surgery. Plaintiff's surgeon told her she needed hip replacement surgery on her left hip, but the surgery had not yet been scheduled. Plaintiff was taking tramadol and hydrocodone-acetaminophen for her hip pain, and she testified it helped reduce the pain some.

Plaintiff testified that she lived by herself in an apartment, but everyday her daughter came to help her shower, get dressed, clean the house, and grocery shop. Her daughter also did her

---

And Acetaminophen, https://www.mayoclinic.org/drugs-supplements/tramadol-oral-route/description/drg-20068050 (last visited Apr. 1, 2021).

laundry. Plaintiff used a wheelchair in the kitchen and a motorized shopping cart to go grocery shopping so she did not have to stand too long. Plaintiff testified that she only drove sometimes for short distances. Plaintiff typically watched television most days and isolated herself because she did not like being around people. Plaintiff would only leave the house to go grocery shopping with her daughter.

Plaintiff testified that she took medications for her depression, which were prescribed by her primary care physician. However, Plaintiff still had good days and bad days. Plaintiff testified that she would benefit from mental health treatment. Plaintiff also testified that she had difficulty remembering things and a hard time focusing on one thing.

A vocational expert ("VE") also testified at the hearing. In one hypothetical posed to the VE, the ALJ asked whether an individual of Plaintiff's age and education, with no past work and who could perform light work and was "limited to performing simple, routine, repetitive tasks that would involve only brief superficial interaction with the general public" would be able to perform the unskilled, light jobs identified by the VE. R. 66. The VE testified that this individual would not be able to perform jobs as a fast food worker or cashier but would still be able to perform jobs as a cleaner, production assembler, and mailroom clerk. However, if the individual were off task 15% or more of the workday, those jobs would be eliminated. The VE also testified that if an individual required a cane to ambulate, the individual would be limited to sedentary work.

The ALJ ultimately denied Plaintiff's request for benefits. R. 22-34. The ALJ found that Plaintiff had no past relevant work and the following severe impairments: bilateral hip osteoarthritis and cartilage loss status post total arthroplasty of right hip, bilateral hand arthrosis, and major depressive disorder. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded Plaintiff's mental impairment caused

moderate limitations in: (1) understanding, remembering, or applying information; (2) interacting with others; and (3) maintaining concentration, persistence, or pace. R. 25-26. The ALJ also concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions, including that she was limited to "simple, routine, repetitive tasks involving only brief, superficial interactions with the general public." R. 27.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, the reviewing court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

7

### III. Discussion

Plaintiff raises three arguments: (1) the ALJ failed to build a logical bridge between the evidence and Plaintiff's ability to concentrate, persist, and maintain pace; (2) the ALJ's subjective symptom analysis was not supported by substantial evidence; and (3) the ALJ's analysis of Plaintiff's RFC is not supported by substantial evidence. Plaintiff's arguments challenge both the ALJ's mental and physical RFC assessments. The Court will address Plaintiff's arguments in relation to each below.

### A. Mental RFC

Plaintiff argues that despite the ALJ finding that she had moderate limitations in maintaining concentration, persistence, and pace, he failed to account for those limitations in the hypothetical to the VE and the subsequent RFC finding.[5] Plaintiff also argues that the ALJ impermissibly played doctor in determining her RFC concerning concentration, persistence, and pace and social functioning.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "This includes any deficiencies the claimant may have in concentration, persistence, or pace." *Id.* "[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). "As the Seventh Circuit explained in *O'Connor-Spinner v. Astrue*, 627

---

[5] Plaintiff challenges the ALJ's overall assessment of her mental RFC, but she does indicate what additional limits should be imposed. Nevertheless, Plaintiff admits that the ALJ should have "conveyed at least moderate limitations in [Plaintiff's] concentration, persistence, and pace." Plaintiff's Motion at 8, Dkt. 17.

F.3d 614 (7th Cir. 2010) and many subsequent cases, employing terms like 'simple, repetitive tasks' on their own will not necessarily address the individualized concentration problem at issue." *Joel A. v. Saul*, No. 19 CV 50156, 2020 WL 6075866, at *3 (N.D. Ill. Oct. 15, 2020) (internal quotations marks and citation omitted).

Here, the ALJ determined that Plaintiff's depression was a severe mental impairment that resulted in moderate limitations in concentration, persistence, and pace. In support of this limitation, the ALJ stated that although Plaintiff was able to complete simple arithmetic problems, she had a consistent history of drug use and was unable to recall words after a brief delay. R. 26. Despite the ALJ's finding, however, the hypothetical to the VE and the RFC only included limits for "simple, routine, repetitive tasks that would involve only brief superficial interaction with the general public," and did not address Plaintiff's limitations in concentration persistence, and pace. R. 66; *see* R. 27.

"[A]n ALJ must explicitly address [limitations in concentration, persistence, and pace] in the hypothetical unless one of three exceptions applies: (1) the vocational expert was independently familiar with the claimant's medical file; (2) the hypothetical adequately apprised the vocational expert of the claimant's underlying medical conditions; or (3) the hypothetical otherwise accounted for the limitations using different terminology." *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). None of these exceptions apply in this case. Other than reviewing records relating to Plaintiff's age, education, and work history, the VE gave no indication that he reviewed Plaintiff's medical records. *See* R. 63. And although the VE heard Plaintiff's testimony, this alone was not enough to orient the VE to the underlying condition causing Plaintiff's limitations where the ALJ made no reference to Plaintiff's limitations in concentration, persistence, and pace specifically or otherwise discuss Plaintiff's depression when questioning the

VE. *See Myers v. Berryhill*, No. 17 CV 4908, 2018 WL 6696627, at *4 (N.D. Ill. Dec. 20, 2018) ("[A]lthough the VE was present at the hearing and thus heard Claimant's testimony, the record does not indicate that the VE based his conclusions on anything other than the ALJ's hypotheticals.").

The Commissioner argues that Plaintiff has not shown that being limited to simple tasks did not accommodate her mental limitations. However, it is the ALJ's duty to establish a logical connection between the evidence and his ultimate RFC. *See O'Connor-Spinner*, 627 F.3d at 618. The ALJ has not done so here where it is unclear from the ALJ's questioning of the VE and his decision how he attempted to account for Plaintiff's moderate difficulties in concentration, persistence, and pace.

The Commissioner cites to three cases where the Seventh Circuit affirmed a hypothetical with a simple-task restriction to argue that no categorical rule exists for individuals with moderate difficulties in concentration, persistence, or pace. Defendant's Response at 12-13, Dkt. 24 (citing to *Pytlewski v. Saul*, 791 Fed. App'x 611 (7th Cir. 2019); *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019); *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019)). However, as this Court has previously found, those cases are factually distinguishable because the ALJs there relied on a doctor's assessment or the claimant's testimony explicating what the particular type of concentration problem was, which in turn allowed the ALJ and the medical expert to "tailor" or "capture" that limitation in an individualized way. *Joel A.*, 2020 WL 6075866, at *5.

Here, the only medical sources to assess limits on Plaintiff's mental functioning were the state agency psychologists, but they did not opine on Plaintiff's ability to perform simple tasks involving only brief interactions with the general public. The ALJ gave considerable weight to Dr. Thomas' opinion that Plaintiff had difficulty managing her mood and her longstanding depression

interfered with her motivation, but Dr. Thomas did not evaluate Plaintiff's ability to perform simple tasks or provide any functional limitations. The ALJ also failed to call an expert to testify about Plaintiff's mental impairments.

The ALJ's RFC analysis similarly fails to support the restriction for simple tasks. The first part of the ALJ's explanation is as follows:

> Finally, a consultative examiner pointed out that the claimant does not have a consistent record of mental health treatment, and he recommends that she would benefit from a more intensive and comprehensive treatment program than the medications prescribed by her primary care provider (Ex. 11F/3). However, the claimant admitted that she is able to manage finances, she watches television all day and does some sewing (See Exhibit 3E and 7E). The claimant appeared well-dressed and answered questions appropriately, making proper eye contact, during a consultative examination (Ex/ 10F/2). Dr. Ramchandani also noted that the claimant's ability to relate is normal (Ex/ 10F/2), and the claimant has been described as pleasant or presenting with a normal mood in most of her treatment records during the relevant period (Ex. 8F/7, 9, 11, & 13; 12F/8, 11, & 13; and 15F/12). Finally, the claimant was able to complete simple arithmetic problems and serial threes task during a consultative examination, but was unable to recall any of four unrelated words after a brief delayed recall (Ex. 11F/3). This warrants limiting the claimant to simple, routine, repetitive tasks involving only brief, superficial interactions with the general public.

R. 30-31. The ALJ also referenced Plaintiff's severe mood swings and suicidal thoughts. R. 31. The ALJ's RFC determination does not sufficiently allow the Court to trace the path of the ALJ's reasoning. The ALJ does not explain how Plaintiff's difficulties with concentration, persistence, and pace, caused by Plaintiff's drug use and poor recall, are accommodated by a restriction to simple tasks or brief interactions with the public. The ALJ was "not qualified to make a vocational determination that limiting someone to unskilled work will adequately account for issues with sustained attention and concentration." *Mawk v. Berryhill*, No. 117CV00427TWPDLP, 2018 WL 1559763, at *6 (S.D. Ind. Mar. 31, 2018).

The same goes for the ALJ's determination that Plaintiff was moderately limited in interacting with others. The ALJ found that although Plaintiff struggled with severe mood swings

and had been fired for arguing with supervisors and coworkers, most of Plaintiff's medical records revealed that she was pleasant, had a normal mood, and made proper eye contact. Yet, this does not explain why Plaintiff's moderate difficulties in social functioning are accommodated by only limiting Plaintiff's contact with the general public, as opposed to supervisors and coworkers, which has been an issue for Plaintiff in the past.

Without further explanation, or support from a medical source, the ALJ engaged in a layperson analysis to translate Plaintiff's moderate difficulties in concentration, persistence, and pace and interacting with others into functional limitations in the RFC. *See Joel A.*, 2020 WL 6075866, at *5 (remanding where the ALJ had no "medical translator" helping him formulate the appropriate RFC restrictions). The ALJ failed to sufficiently explain the extent of Plaintiff's mental limitations, identify the evidence supporting these limitations, or otherwise explain his reasoning in the RFC assessment. *See Lanigan*, 865 F.3d at 563 (remanding whether "the ALJ made no effort to build an accurate and logical bridge" between the RFC restriction and the concentration, persistence, and pace finding). "While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) (emphasis in original) (internal citation omitted).

Accordingly, a remand is required for proper consideration of Plaintiff's mental RFC, namely her limitations in concentration, persistence, and pace and interacting with others. On remand, the ALJ shall explicitly address all of Plaintiff's medically supported limitations in both the hypothetical to the VE and the RFC to determine if there are jobs that exist in significant numbers that Plaintiff can perform. The ALJ must provide a thorough explanation of his

conclusions regarding Plaintiff's mental limitations and the effect they have on Plaintiff's ability to work.

### B. Physical RFC

Plaintiff also argues that the ALJ improperly discounted her subjective symptoms and relied on outdated state agency opinions in formulating the physical RFC concerning her hip pain.[6]

In determining that Plaintiff was capable of light work with postural limitations, the ALJ found that Plaintiff's statements about her symptoms were not entirely consistent with the objective medical evidence and other evidence of record. R. 30. The ALJ pointed to post-surgical treatment notes indicating that Plaintiff's right hip surgery was successful, she was healing normally, she reported no pain in her right hip, and her range of motion in her lower extremities remained intact. R. 30. Although Plaintiff had yet to have left hip surgery, the ALJ stated that her gait and lower extremity strength were normal even before her right hip surgery. *Id.*

The ALJ also gave considerable weight to the state agency physicians' opinions, even though they had not reviewed the records relating to Plaintiff's hip surgery in October 2017, noting that he "generally agrees that the claimant is capable of light work with some postural limitations." R. 31. The ALJ then cited the same treatment notes he discussed when discounting Plaintiff's symptoms.

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018). The Commissioner argues that because Plaintiff's subsequent medical records do not reveal a worsening condition or additional limitations beyond those assessed by the state agency

---

[6] Plaintiff does not raise any arguments concerning the ALJ's assessment of Plaintiff's osteoarthritis in her hands.

physicians, the ALJ properly relied on those opinions in the RFC assessment. The Court cannot say that Plaintiff's medical records from February 2017 through October 2017 were not new or significant developments that would not have affected the reviewing physicians' assessment of Plaintiff's limitations. Although Plaintiff reported no right hip pain in a post-surgical treatment note on October 17, 2017, only four days earlier, she was reportedly taking hydrocodone-acetaminophen and tramadol for pain. R. 581. Plaintiff was still taking these pain medications at the time of the hearing in January 2018. Additionally, the ALJ cites to the October 12, 2017 treatment note to show that Plaintiff's range of motion in both lower extremities was now intact following Plaintiff's right hip surgery. R. 31. However, the treatment note mentions Plaintiff's intact range of motion in her wrists, elbows, shoulders, knees, ankles, and feet. R. 581. It does not mention Plaintiff's range of motion in her lower extremities, other than to note that Plaintiff was still in a wheelchair due to surgery and further evaluation would be deferred until Plaintiff was released for her hip surgery. R. 581-82.

  This reinforces the need for a medical source to determine Plaintiff's functional limitations instead of relying on the ALJ's determination that subsequent medical records did not provide a basis for greater limits. We cannot accept the Commissioner's argument that the newer records would not have made a difference. *See Moreno*, 882 F.3d at 729 (holding that even medical records that may show improvement cannot be assessed solely by the ALJ). Accordingly, a remand is warranted to allow for an updated functional capacity assessment that considers all the medical records before determining Plaintiff's RFC.

  In light of this remand, the ALJ should also further explain the reasons for rejecting Plaintiff's subjective symptoms by addressing the factors outlined in Social Security Ruling 16-3p, 2017 WL 5180304. It is not clear what aspects of Plaintiff's testimony and statements were

discredited by the ALJ. The reasons for the ALJ's credibility determination appear to rest mainly on the rationale that despite osteoarthritis in both hips and complaints of pain, Plaintiff's gait and lower extremity strength remained normal even before her hip surgery. However, in many of the treatment notes cited by the ALJ, Plaintiff is either reporting hip pain or taking pain medication, despite these "normal" findings. The ALJ does not address how Plaintiff's continued reports of pain, despite taking pain medication, having surgery, and participating in physical therapy factor into the RFC determination.

The ALJ should also explain how he evaluated Plaintiff's use of a cane. Earlier in the decision, the ALJ appears to reject Plaintiff's need for a cane, noting that it had not been prescribed by a doctor. R. 25. However, a lack of a prescription by itself is not enough to discredit Plaintiff's use of a cane for her hip pain. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (finding it absurd that an ALJ doubted the plaintiff's descriptions of her functional deficits because she used a cane even though it was not prescribed by a physician). The ALJ should explicitly address this in relation to her functional limitations, especially here where the VE testified that use of a cane to ambulate would limit the individual to sedentary work. Moreover, on remand Plaintiff should ensure that the ALJ receives all relevant medical records to allow for a proper evaluation of Plaintiff's complaints of worsening left hip pain and whether she followed up appropriately with her surgeon or if something else prevented her from seeking treatment. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."). Accordingly, a remand is necessary for further consideration of Plaintiff's RFC for both her mental and physical limitations.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: April 5, 2021           By: _____
                                                      Lisa A. Jensen
                                                      United States Magistrate Judge